UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

TYLER CHRISTIAN ANDERSON,

Plaintiff,

v.

C.O. SHEEKS, *et al.*,

Defendants.

Case No. 3:20-cv-00143-MMD-WGC

SCREENING ORDER ON
AMENDED COMPLAINT

On March 8, 2021, the Court screened Plaintiff Tyler Christian Anderson's complaint pursuant to 28 U.S.C. § 1915A. (ECF No. 3.) The Court allowed some of Plaintiff's claims to proceed and dismissed other claims without prejudice and with leave to amend. (*Id.*) Plaintiff has filed a first amended complaint ("FAC"). (ECF No. 7.) The Court accepts the FAC as the operative complaint in this case. The Court now screens the FAC under 28 U.S.C. § 1915A.

I.      **SCREENING STANDARD**

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the Court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* §§ 1915A(b)(1), (2). *Pro se* pleadings, however, must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States; and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, under the Prison Litigation Reform Act ("PLRA"), a federal court must dismiss an incarcerated person's claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the Court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the Court takes as true all allegations of material fact stated in the complaint, and the Court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *See id.*

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide

the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Finally, all or part of a complaint filed by an incarcerated person may be dismissed *sua sponte* if that person's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (*e.g.*, claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (*e.g.*, fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

## II.     SCREENING OF FAC

In the FAC, Anderson sues multiple Defendants for events that took place while he was incarcerated at Northern Nevada Correctional Center ("NNCC"). (ECF No. 1-1 at 1.) Anderson sues Defendants Sheeks, Morgan, Bartlett, Williams, Ralston, Carr, Ortega, Flamm, Miller, Henly, Garabaldi, and Bacca. (*Id.* at 1-4.) Anderson brings three counts and seeks monetary and injunctive relief. (*Id.* at 6-16.) The Court will consider Anderson's claims in turn.

### A.  Count I

In Count I, Anderson alleges that on January 23, 2020, at around 7 p.m., Sheeks came to Anderson's cell for count. (ECF No. 7 at 6.) Anderson did not respond because he was sleeping with ear plugs. (*Id.*) Sheeks, Morgan, and Ortega then tried to get Anderson to respond, but Anderson ignored them because it was obvious that he was alive and breathing. (*Id.*) Anderson was tired and did not want to waste his breath. (*Id.*) Sheeks then noticed that Anderson had minor, self-inflicted scratches on his right forearm and called for medical. (*Id.*)

///

3

Anderson was instructed to submit to wrist restraints so that medical could evaluate him, but he refused medical attention because he was afraid that his cell would be searched and that his property might be taken. (*Id.*) Anderson's door was then opened, and he was cuffed and shackled. (*Id.*) All six or seven correctional officers punched Anderson several times, and he was tased three times in his right calf muscle. (*Id.* at 6-7.)

Anderson was then placed into a holding area where medical took a quick look at his self-inflicted injuries. (*Id.* at 7.) Carr cut Anderson's clothes off with scissors, and Anderson was placed in a suicide cell, where an EKG was performed. (*Id.*) No evaluation was done to determine whether Anderson was suicidal. (*Id.*) Ralston took pictures of Anderson's injuries. (*Id.*)

Based on these allegations, Anderson claims that the Defendants violated the Eighth Amendment and his right to refuse medical treatment under the Fourteenth Amendment. (*Id.*) The Court construes Anderson's Eighth Amendment claim as a claim of excessive use of force. The Court will consider these claims in turn.

### 1. Excessive Use of Force

When a prison official stands accused of using excessive physical force in violation of the cruel and unusual punishment clause of the Eighth Amendment, the question turns on whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). In determining whether the use of force was wanton and unnecessary, it may also be proper to consider factors such as the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7. Although an inmate need not have suffered serious injury to bring an excessive force claim against a prison official, the Eighth Amendment's prohibition on cruel and unusual

punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force. *Id.* at 9-10.

The Court finds that Anderson states a colorable excessive use of force claim. The Court liberally construes the FAC as alleging that Sheeks ordered Anderson to submit to wrist restraints so that he could be taken for medical evaluation. Anderson refused and stated that he did not want medical evaluation. In response, Sheeks, Morgan, and Ortega entered Anderson's cell and forced the restrains on him. After he was restrained, Sheeks, Morgan, and Ortega punched Anderson and tased him. These allegations are sufficient to state a colorable claim on screening. This claim will proceed against Defendants Sheeks, Morgan, and Ortega.

To the extent that Anderson is attempting to bring a claim of excessive use of force against any other Defendants in Count I, the Court finds that Anderson fails to state a colorable claim. The FAC briefly references six or seven officers punching Anderson, but it does not state which, if any, of the other Defendants were involved, so it fails to state a colorable claim against any of the other Defendants.

### 2. Right to Refuse Medical Treatment

Anderson alleges that the Defendants violated his Fourteenth Amendment right to refuse unwanted medical treatment. A "competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment." *Cruzan by Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 278 (1990). Courts determine whether a plaintiff's right to refuse treatment was violated by balancing the plaintiff's "liberty interests against the relevant state interests." *Id.* at 279 (quoting *Youngberg v. Romeo*, 457 U.S. 307, 321 (1982)). In other words, "[i]n determining whether a substantive right protected by the Due Process Clause has been violated, it is necessary to balance the liberty of the individual and the demands of an organized society." *Youngberg*, 457 U.S. at 320 (citation and quotation marks omitted).

The Court finds that Anderson states a colorable Fourteenth Amendment claim. The Court liberally construes the FAC as alleging that Anderson failed to respond to count

and that he had inflicted minor cuts on his forearm. But it was clear that Anderson was not seriously injured and that he was not suicidal. Anderson told officers that he was not suicidal, and that he did not want to be placed in suicide watch. It was clear that Anderson did not need medical attention.

Nonetheless, Sheeks, Morgan, and Ortega stormed into Anderson's room and dragged him out for a medical evaluation. Carr cut Anderson's clothes away and put him in a suicide cell. After all of that, nobody even evaluated whether Anderson was suicidal, suggesting that the Defendants knew that Anderson was not suicidal and put him in the suicide cell solely as a form of retaliation. These allegations are sufficient to state a colorable claim on screening. This claim will proceed against Defendants Sheeks, Morgan, Ortega, and Carr.

**B. Count II**

In Count II, Anderson alleges that on December 31, 2019, Fryer was escorting Anderson back from the yard to his cell. (ECF No. 7 at 9.) Fryer told Anderson that she needed his jacket back. (*Id.*) Anderson agreed, but out of retaliation Fryer told Inwood that Anderson had refused to return the jacket. (*Id.*) Inwood then entered Anderson's cell, slapped him, threatened to kill him, and removed the jacket. (*Id.*) Anderson remains in fear of potential retaliation, and his cell was searched on March 23, 2021, for an allegedly random search. (*Id.*) It is evident to Anderson that he and his cell mate are being treated unfairly and retaliated against because they are exercising their right to file grievances. (*Id.* at 9-10.)

Based on these allegations, Anderson brings a claim of excessive use of force. Because Anderson references retaliation, the Court also liberally construes the FAC as bringing a claim of First Amendment retaliation. The Court will consider these claims in turn.

**1. First Amendment Retaliation**

Prisoners have a First Amendment right to file prison grievances and to pursue civil rights litigation in the courts. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004).

6

1    "Without those bedrock constitutional guarantees, inmates would be left with no viable

2    mechanism to remedy prison injustices. And because purely retaliatory actions taken

3    against a prisoner for having exercised those rights necessarily undermine those

4    protections, such actions violate the Constitution quite apart from any underlying

5    misconduct they are designed to shield." *Id.*

6        To state a viable First Amendment retaliation claim in the prison context, a plaintiff

7    must allege: "(1) [a]n assertion that a state actor took some adverse action against an

8    inmate (2) because of (3) that prisoner's protected conduct, and that such action (4)

9    chilled the inmate's exercise of his First Amendment rights, and (5) the action did not

10   reasonably advance a legitimate correctional goal." *Id.* at 567-68. Total chilling is not

11   required; it is enough if an official's acts would chill or silence a person of ordinary

12   firmness from future First Amendment activities. *Id.* at 568-69.

13       The Court finds that Anderson fails to state a colorable claim of First Amendment

14   retaliation. Anderson's vague reference to grievances is insufficient to support that any of

15   the alleged conduct by the Defendants was because of his filing of grievances, or any

16   other protected conduct. As such, the Complaint does not state a colorable claim, and the

17   Court dismisses this claim without prejudice.

18                    **2. Excessive Use of Force[1]**

19       The Court finds that Anderson states a colorable excessive use of force claim

20   against Fryer and Inwood.[2] The Court liberally construes the FAC as alleging that on

21   December 31, 2019, Fryer falsely told Inwood that Anderson had refused to return a jacket

22   to get Inwood to attack Anderson. Inwood entered Anderson's cell slapped him, took the

23   jacket off him by force, and threatened to kill him. These actions were not necessary

24   because Anderson was willing to hand over the jacket. These allegations are sufficient to

25

26       [1]The standard for stating an excessive use of force claim is discussed in Section
27   II(A)(1).

28       [2]Anderson does not list Fryer or Inwood as Defendants in this case. However,
     based on the allegations in the FAC, the Court liberally construes the FAC to include Fryer
     and Inwood as Defendants.

1    state a colorable claim on screening. This claim will proceed against Defendants Fryer

2    and Inwood.

3        **C. Count III**

4        In Count III, Anderson alleges that he told his psychologist, Dr. Kyle, case worker,

5    Meza, Dr. Capreliss, and Lisa Walsh that he had an enemy at Warm Springs Correctional

6    Center ("WSCC"). (ECF No. 7 at 11.) Anderson's cellmate in unit 7-A, William Campbell,

7    checked Anderson's paperwork and told him to roll-up from unit 4.[3] (*Id.*) Anderson

8    believes that his enemy hired Ricky Trader and Josh Green to beat him up. (*Id.*) Anderson

9    "had to wait till [his] black eye healed before [he] could leave the prison or else they'd stab

10   [him]." (*Id.*) Anderson asked Cornfield to place all three individuals on his enemy list. (*Id.*)

11       Additionally, Anderson is currently pending a transfer to High Desert State Prison

12   ("HDSP"), and he has asked that five inmates at HDSP be placed on his enemy list

13   because they threatened his father, a former inmate. (*Id.* at 12.) Anderson believes that

14   they may try to hurt him instead. (*Id.*)

15       Anderson was previously housed at Ely State Prison ("ESP"), and, at the time,

16   Anderson asked that Joseph Martinez be placed on his enemy list because Martinez was

17   convicted of molesting his underage sister. (*Id.*) Anderson never encountered Martinez,

18   but he was beaten up by an inmate that "runs with his race." (*Id.*) Therefore, Anderson

19   believes that officials failed to place Martinez on his enemy list. (*Id.*)

20       NDOC officials believe that Anderson is a "management problem" because of his

21   mental illness. (*Id.* at 13.) So NDOC officials overlook his safety and wellbeing and refuse

22   to consider his age and size. (*Id.* at 12-13.) Based on these allegations, Anderson brings

23   a failure to protect claim. (*Id.* at 11.)

24       Under the Eighth Amendment, prison officials have a duty to protect prisoners from

25   violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).

26   To establish a violation of this duty, the prisoner must establish that prison officials were

27   deliberately indifferent to serious threats to the inmate's safety. *Id.* at 834. To demonstrate

28

---

[3]It is not clear whether William Campbell was Anderson's enemy at WSCC or was warning Anderson about an enemy at WSCC.

that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Id.* at 837. Prison officials may not escape liability because they cannot, or did not, identify the specific source of the risk; the serious threat can be one to which all prisoners are exposed. *Id.* at 843.

A prisoner seeking a remedy for unsafe conditions does not have to await a tragic event such as an actual assault before obtaining relief. *Id.* at 845. "An inmate seeking an injunction on the ground that there is a contemporary violation of a nature likely to continue must adequately plead such a violation." *Id.* at 845-46 (quotations and citation omitted). The plaintiff must plead that prison officials are "knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so." *Id.* at 846.

The Court finds that Anderson fails to state a colorable failure to protect claim. Anderson alleges that at various times NDOC officials have failed to add certain inmates to his enemy list. But the allegations do not support that the Defendants ignored a serious threat to Anderson's safety. Anderson alleges that officials at ESP failed to put a certain inmate on his enemy list and, although he never encountered that inmate, a different inmate of the same race beat him up. As Anderson never encountered his alleged enemy, it does not appear that the alleged enemy constituted a serious threat to Anderson's safety. Anderson alleges that he was beaten up by someone else, but the allegations do not support that any NDOC officials were aware of any potential danger posed by this other inmate.

Similarly, Anderson alleges that while he was at WSCC he told officials about another inmate who was an enemy, and that he personally believes that his enemy then hired two other inmates to beat him up. Again, it appears that Anderson was never in danger from the person that he asked to be placed on his enemy list. It is not clear whether

1  Anderson was beaten up by the two inmates that he believes his enemy hired. Even

2  assuming that he was beaten up, the FAC does not allege facts supporting that any

3  NDOC official was aware of any potential danger posed by the two inmates who Anderson

4  believes were hired to beat him up.

5  Finally, Anderson alleges that he may be transferred to HDSP, and that he has

6  enemies there. But again, Anderson does not allege any facts supporting that he will be

7  in danger at HDSP. The vague allegation that Anderson has enemies at HDSP, without

8  more, is too remote to support a serious threat to Anderson's safety. As such, the Court

9  dismisses this claim without prejudice.

10  **D. Defendants Bartlett, Williams, Ralston, Flamm, Miller, Henly, Garabaldi,**

11  **and Bacca**

12  The FAC does not include any allegations about Defendants Bartlett, Williams,

13  Ralston, Flamm, Miller, Henly, Garabaldi, and Bacca. As such, the FAC does not state a

14  colorable claim against any of these Defendants, and the Court dismisses them from the

15  entirety of this case without prejudice.

16  **III.    CONCLUSION**

17  For the foregoing reasons, it is ordered that the Court accepts the FAC (ECF No.

18  7) as the operative complaint in this case. The Clerk of the Court is directed to send

19  Anderson a courtesy copy of the FAC.

20  It is further ordered that the Court construes the FAC to include Fryer and Inwood

21  as Defendants. The Clerk of the Court is directed add Fryer and Inwood as Defendants

22  in this action.

23  It is further ordered that Anderson's excessive use of force claim in Count I will

24  proceed against Defendants Sheeks, Morgan, and Ortega.

25  It is further ordered that Anderson's claim of a violation of his right to refuse medical

26  treatment in Count I will proceed against Defendants Sheeks, Morgan, Ortega, Carr.

27  It is further ordered that Anderson's First Amendment retaliation claim in Count II

28  is dismissed without prejudice.

1        It is further ordered that Anderson's excessive use of force claim in Count II will

2   proceed against Defendants Inwood and Fryer.

3        It is further ordered that Anderson's failure to protect claim in Count III is dismissed

4   without prejudice.

5        It is further ordered that Defendants Bartlett, Williams, Ralston, Flamm, Miller,

6   Henly, Garabaldi, and Bacca are dismissed from the FAC without prejudice.

7        It is further ordered that, given the nature of the claim(s) that the Court has

8   permitted to proceed, this action is stayed for 90 days to allow Anderson and Defendant(s)

9   an opportunity to settle their dispute before the $350.00 filing fee is paid, an answer is

10  filed, or the discovery process begins. During this 90-day stay period and until the Court

11  lifts the stay, no other pleadings or papers may be filed in this case, and the parties may

12  not engage in any discovery, nor are the parties required to respond to any paper filed in

13  violation of the stay unless specifically ordered by the court to do so. The Court will refer

14  this case to the Court's Inmate Early Mediation Program, and the Court will enter a

15  subsequent order. Regardless, on or before 90 days from the date this order is entered,

16  the Office of the Attorney General must file the report form attached to this order regarding

17  the results of the 90-day stay, even if a stipulation for dismissal is entered prior to the end

18  of the 90-day stay. If the parties proceed with this action, the Court will then issue an

19  order setting a date for Defendants to file an answer or other response. Following the

20  filing of an answer, the Court will issue a scheduling order setting discovery and

21  dispositive motion deadlines.

22       It is further ordered that "settlement" may or may not include payment of money

23  damages. It also may or may not include an agreement to resolve Anderson's issues

24  differently. A compromise agreement is one in which neither party is completely satisfied

25  with the result, but both have given something up and both have obtained something in

26  return.

27       It is further ordered that if the case does not settle, Anderson will be required to

28  pay the full $350.00 filing fee. This fee cannot be waived, and the fee cannot be refunded

once the Court enters an order granting Anderson's application to proceed *in forma pauperis*. If Anderson is allowed to proceed in forma pauperis, the fee will be paid in installments from his prison trust account. *See* 28 U.S.C. § 1915(b). If Anderson is not allowed to proceed in forma pauperis, the $350.00 will be due immediately.

It is further ordered that if any party seeks to have this case excluded from the inmate mediation program, that party must file a "motion to exclude case from mediation" on or before 21 days from the date of this order. The responding party will have seven days to file a response. No reply may be filed. Thereafter, the Court will issue an order, set the matter for hearing, or both.

The Clerk of Court is directed to electronically serve a copy of this order, and a copy of Anderson's FAC (ECF No. 7), on the Office of the Attorney General of the State of Nevada, by adding the Attorney General of the State of Nevada to the docket sheet. This does not indicate acceptance of service.

It is further ordered that the Attorney General's Office must advise the Court within 21 days of the date of the entry of this order whether it will enter a limited notice of appearance on behalf of Defendants for the purpose of settlement. No defenses or objections, including lack of service, will be waived as a result of the filing of the limited notice of appearance.

DATED THIS 29th Day of June 2021.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

12

1
2
3 **UNITED STATES DISTRICT COURT**
4 **DISTRICT OF NEVADA**
5

TYLER CHRISTIAN ANDERSON,

Plaintiff,

v.

C.O. SHEEKS, *et al.*,

Defendants.

Case No. 3:20-cv-00143-MMD-WGC

REPORT OF ATTORNEY GENERAL
RE: RESULTS OF 90-DAY STAY

**NOTE: ONLY THE OFFICE OF THE ATTORNEY GENERAL WILL FILE THIS FORM. THE INMATE PLAINTIFF MAY NOT FILE THIS FORM.**

On June 29, 2021, the Court issued its screening order stating that it had conducted its screening pursuant to 28 U.S.C. § 1915A, and that certain specified claims in this case would proceed. The Court ordered the Office of the Attorney General of the State of Nevada to file a report 90 days after the date of the entry of the Court's screening order to indicate the status of the case at the end of the 90-day stay. By filing this form, the Office of the Attorney General hereby complies.

///
///
///
///
///
///
///
///
///
///
///

13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**REPORT FORM**

[Identify which of the following two situations (identified in bold type) describes the case, and follow the instructions corresponding to the proper statement.]

**Situation One: Mediated Case**: **The case was assigned to mediation by a court-appointed mediator during the 90-day stay.** [If this statement is accurate, check **ONE** of the six statements below and fill in any additional information as required, then proceed to the signature block.]

_____    A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have reached a settlement (*even if paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in the case until a specified date upon which they will file a stipulation of dismissal.*)

_____    A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

_____    No mediation session with a court-appointed mediator was held during the 90-day stay, but the parties have nevertheless settled the case. (*If this box is checked, the parties are on notice that they must SEPARATELY file a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

_____    No mediation session with a court-appointed mediator was held during the 90-day stay, but one is currently scheduled for _____ [*enter date*].

_____    No mediation session with a court-appointed mediator was held during the 90-day stay, and as of this date, no date certain has been scheduled for such a session.

_____    None of the above five statements describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

\* \* \* \* \*

**Situation Two: Informal Settlement Discussions Case**: **The case was NOT assigned to mediation with a court-appointed mediator during the 90-day stay; rather, the parties were encouraged to engage in informal settlement negotiations.** [If this statement is accurate, check **ONE** of the four statements below and fill in any additional information as required, then proceed to the signature block.]

_____    The parties engaged in settlement discussions and as of this date, the parties have reached a settlement (*even if the paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

14

_____ The parties engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

_____ The parties have not engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

_____ None of the above three statements fully describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

Submitted this _____ day of _____, _____ by:

Attorney Name: _____          _____
                        Print                                          Signature

Address: _____          Phone:

           _____          _____

                                              Email:

                                              _____

15